UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

TERRANCE DAWSON,

                Petitioner,                        Case No. 1:14-cv-115

v.                                               Honorable Gordon J. Quist

SHERRY BURT,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Following a bench trial in the Berrien County Circuit Court, Petitioner was convicted of five counts of being a felon in possession of a firearm (felon in possession), MICH. COMP. LAWS § 750.224f, five counts of possessing a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b, five counts of kidnaping, MICH. COMP. LAWS § 750.349, one count of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, two counts of assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS §750.82, and two counts of first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS §750.520b. Petitioner was sentenced as a third-offense habitual offender, MICH. COMP. LAWS § 769.11, to 4 to 10 years' imprisonment for each of the felon-in-possession convictions, 2 years' imprisonment for each of the felony-firearms convictions, 50 to 75 years' imprisonment for three kidnaping convictions, 35 to 75 years for the other two kidnaping convictions, life imprisonment for the assault-with-intent-to-murder conviction, 3 to 8 years' imprisonment for each of the felonious-assault convictions, and life imprisonment for

each of the CSC-I convictions. In his amended *pro se* petition, Petitioner raises seven grounds for relief, as follows:

I.      Sufficiency of evidence

II.     Right to Face to Face Confrontation

III.    Jury Waiver

IV.     Right to confront accusser [sic]

V.      Defendant Was Denied Due Process of Law

VI.     Petitioner Was Denied the Effective Assistance of Counsel/Appellate Counsel

VII[].  Prosecutor Failed to Correct Perjury[1]

(Am. Pet., ECF No. 25, PageID.546-547, 549-551.)

Respondent has filed an answer to the petition (ECF No. 29) stating that the grounds should be denied because they are noncognizable, procedurally defaulted, or have no merit. Upon review and applying the AEDPA standards, I find that Grounds I, III, IV, V, and VI(B) are without merit. Grounds II, VI(A), and VII are procedurally defaulted. Accordingly, I recommend that the petition be denied.

## Procedural History

### A.      Trial Court Proceedings

During the summer of 2010, Petitioner separately abducted five young women at gunpoint, raping two and shooting another. In Case No. 2010003358 (hereafter 3358), Petitioner was charged with one count each of CSC I, kidnaping, and felon in possession, together with two

---

[1] Petitioner numbers his seventh habeas ground as Ground VIII. The Court has renumbered the ground to reflect the actual number of issues raised.

counts of felony firearm. In Case No. 2010003359 (3359), Petitioner was charged with one count each of kidnaping, felon in possession, felonious assault, and felony firearm. In Case No. 2010003429 (3429), Petitioner was charged with one count each of assault with intent to murder, kidnaping, felon in possession, and felony firearm. In Case No. 2010003430 (3430), Petitioner was charged with one count each of CSC I, kidnaping, felon in possession, and felony firearm. Finally, in Case No. 2010003431 (3431), Petitioner was charged with kidnaping, felon in possession, felonious assault, and felony firearm. Following a preliminary examination held on July 29, 2010, for all cases but Case No. 3429, Petitioner was bound over on all charges. (Docket Records for Cases. Nos. 3358, 3359, 3430, 3431, ECF Nos. 30-1, 30-2, 30-4, 30-5, PageID.952-953, 958-959, 963-964, 968-969, 973-974; Prelim. Examination Hr'g Tr., 30-7, ECF No. 30-7, PageID.1088-1093.) In Case No. 3429, the preliminary examination was adjourned to August 3, 2010, at which time Petitioner was bound over on the charges in that case. (Docket Record for Case No. 3429, ECF No. 30-3, PageID.963-964.) A supplemental information was filed in all five cases, charging Petitioner as a third-offense felony offender, MICH. COMP. LAWS § 769.11. (*Id.*, PageID.953, 959, 964, 969, 974.) At a hearing held on October 15, 2010, Petitioner waived his right to a jury trial and agreed to allow the presiding judge to decide the cases. (Hr'g on Mot. to Waive Jury Tr., ECF No. 30-8, PageID.1098-1100.) On October 21, 2010, the court heard the prosecutor's motion for joinder of all five cases, which was opposed by Petitioner. The court granted the prosecutor's motion. (Mot. for Joinder Tr., ECF No. 30-9, Page ID.1110-1111.) Petitioner was tried before the judge on all

offenses in a two-day trial, with testimony heard on November 30, 2010, and an oral decision read

on December 3, 2010.[2]

On December 3, 2010, the court recited extensive findings of the relevant facts

respecting each case, from which the court concluded Petitioner was guilty of all offenses other than

one felony-firearm charge in Case No. 3358:

> THE COURT: . . . I'll start first with file 2010003359, this case involves the victim [WS].
>
> Findings of fact. The alleged victim testified that [WS], 15 years old, was walking in an alley in the city of Benton Harbor, near Columbus and Superior, on July 17th of 2010. The defendant, Terrance Dawson, was driving a motor vehicle and approached [WS]. Dawson grabbed [WS]. As she began screaming, he stated, Shut up or I will blow your brains out, close quote. [WS] saw the handgun and got into the vehicle because she feared that she would be shot with the firearm. [WS's] description of the gun involved was consistent with People's Exhibit Number 2, which was admitted and received. The defendant drove away, and shortly thereafter, [WS] opened her car door and jumped from the moving vehicle. [WS'] elbow, knee and thigh were scabbed from the jump. [WS] ran to a house and the police were called. [WS] identified the defendant as her assailant on three separate occasions. The police detained Dawson as a suspect and [WS] ID'd him at a show-up near the house where she was staying; the second time, during a lineup as evidenced by Peo -- People's Exhibit Number 5, which was admitted and received; and the third time, in open court during the defendant's trial. It is important to note that [WS] eliminated Larry Doyle as a suspect during a showup examination.
>
> The Court received the testimony of Officer Jerol Williams, who testified that he is a Benton Harbor Police Officer and he was directed by his sergeant to look for a weapon along Indiana Street. Officer Williams testified that he found the handgun depicted in People's Exhibit Number 2, which was admitted and received, along Indiana Street in the area where the defendant's vehicle was spotted.
>
> The Court also heard the sworn testimony of Officer Brian Campbell, who testified that he is a Benton Township Police Officer, and that he was working on July 17th of 2010. He'd received a call to be on the lookout for a motor vehicle.

---

[2] Trial transcripts hereafter will be referenced as follows:
Transcript for November 30, 2010:        T. Tr. I, ECF No. 30-10, PageID.___.
Transcript for December 3, 2010:         T. Tr. II, ECF No. 30-11, PageID.___.

He spotted a vehicle matching the description traveling, quote, very fast, close quote, down Indiana towards Pipestone. Officer Campbell later stopped this vehicle leaving the area where the gun in People's Exhibit Number 2 was found, and the only person in that motor vehicle was the defendant Mr. Dawson.

The Court also heard the sworn testimony of Officer Mike--excuse me, Mark Lundin, who testified that he's an evidence tech with the Berrien County Sheriff's Department. He inventoried the vehicle driven by the defendant on July 17th of 2010 and found a condom wrapper, along with latent fingerprints in the motor vehicle. The defendant testified that he did not see [WS] on July 17th of 2010. Mr. Dawson claims that he was ID'd because his picture appeared in a local newspaper after he was apprehended. The defendant admitted in his testimony that there was a woman who took off her clothes in his motor vehicle on July 17th of 2010. He admitted to, quote, messing around with prostitutes, close quote, but claims to have had no contact with any of the alleged victims.

The Court carefully weighed the evidence and the credibility of the witnesses and finds the defendant's testimony to lack credibility. The testimony of the -- of the victim is corroborated by the testimony of re -- of the reporting officers, it was judged by the Court to be highly credible. The Court finds beyond a reasonable doubt that the defendant knowingly confined or restrained the victim -- victim by ordering her at gunpoint into his motor vehicle and that his intent or purpose in restraining the -- the victim was to engage in criminal sexual contact. The Court further finds beyond a reasonable doubt that the defendant committed a battery upon the victim, [WS], with the intent to assault or batter her and that when this battery took place, he possessed a firearm and knew that he had the ability to commit the battery.

The Court further finds beyond a reasonable doubt that on July 17th of 2010 the defendant possessed the handgun depicted in People's Exhibit 2 and that the defendant was convicted of a felony as evidenced by People's Exhibit Number 6, which was also admitted and received. Finally, the Court finds beyond a reasonable doubt that on July 17th of 2010 the defendant possessed a firearm at the time he committed the crime of Kidnapping and/or Assault with a Dangerous Weapon and/or a Felon in Possessing a Firearm. The Court finds that the -- that the defendant intended to commit the crimes -- crimes of Kidnapping, Assault with a Dangerous Weapon and Felon Possessing a Firearm, that he did commit these crimes while possess -- while he possessed a handgun, which is a firearm. The Court is not required to make a finding as to whether the handgun was actually loaded.

Accordingly, in file 2010003359, as to the victim [WS], the Court finds beyond a reasonable doubt that the defendant, Terrance Dawson, is guilty as charged to Count l, Kidnapping, guilty as charged to Count 2, Possession of a

Firearm by a Felon, guilty as charged to Count 3, Assault with a Dangerous Weapon, guilty as charged to Count 4, Felony Firearm, and finally, the Court also takes judicial notice of the defendant's prior convictions on or about June 30th of 1994 as evidence -- as evidenced in People's Exhibit Number 6. That's my verdict as to the initial file.

We'll next turn to file 2010003358. In this case the alleged victim is [LJ]. The alleged victim testified that she is 16 years old and that on July 17th of 2010 she was walking in the city of Benton Harbor, near Columbus, from her grandmother's house to her sister's house, that a man in a car approached her and asked her how old she was and she kept walking. She testified that he then pulled the -- the car across the sidewalk, blocking her, and ordered her at gunpoint into his motor vehicle. [LJ] testified that she got into the car because she was afraid the defendant would shoot her. She testified that the defendant pushed the gun against her side. [LJ] testified that she got into the vehicle at the passenger door. While the defendant was driving, he held the gun in his -- in his hand. The defendant parked the vehicle and told her to take her clothes off and get in the backseat of the vehicle. [LJ] testified that the defendant used a condom and penetrated her vagina with his penis. After the rape, the defendant drove [LJ] to an abandoned green house, threw her clothes at her and told her to get dressed. He told her that if she said what happened to anyone, he would kill her.

The police were called and ultimately brought the defendant by the house where [LJ] was staying. [LJ] ID'd the defendant in the show-up. [LJ] also ID'd the defendant in open court and ID'd the weapon on People's Exhibit 2.

The Court received testimony from Tammy Jerz, J-E-R-Z, who is now in a special training as a SANE Nurse, or Sexual Assault Nurse Examiner. Jerz testified that she examined [LJ] for approximately four hours. During the examination, she made the following observations: blood on the cervix of the victim, between twelve and three o'clock, vaginal tearing at six o'clock, and redness at seven to five o'clock. Jerz testified that the injuries were consistent with a vaginal penetration. She also testified that the victim was very emotional during the exam.

And I realize, counsel, that I'm--some of this is going to be redundant as to each file. I'm-- I'm going to restate the testimony of some of the witnesses to have a clear record for future reference.

Officer Mark Lundin, in addition to -- to the earlier summary, People's Exhibit 7 indicates a condom wrapper was found in the defendant's car after he was taken into custody. Further, Officer Lundin was able to lift multiple fingerprints from the defendant's vehicle. These fingerprints were sent to the Michigan State Police Crime Laboratory in Grand Rapids, Michigan.

The Court also received testimony from Officer Doug Westrate, who testified that he is a fingerprint examiner for the Michigan State Police at the crime lab in Grand Rapids. He has been doing this type of analysis for 15 years and was qualified by the Court as an expert witness.

Westrate testified that he reviewed 10 latent fingerprints supplied in the -- these cases. He was able to match the fingerprint of the defendant to the driver's door of the motor vehicle and a fingerprint from this victim, [LJ], to the passenger's door.

The Court also received the testimony of Detective Wes Smigielski, who testified he is a Detective with the Benton Harbor Police Department. He testified that on or about July 17th of 2010 he responded to the home where the victim [LJ] was staying. He was present with the victim when the defendant was brought by for a show up ID. He testified that the victim reacted emotionally upon seeing the defendant and positively identified him immediately. Further, he testified that there were no individuals on the street or in the sidewalk area when the defendant was brought by for the show up and ID'd from a second story window. The witness also testified that he set up the lineup contained in People's Exhibit Number 5 and that all four of the alleged victims that participated in the lineup positively identified the defendant in the lineup. The witness, Detective Smigielski, testified that he interviewed the defendant for several hours and, during the course of the interview, the defendant admitted the gun, in Exhibit 2, was his, admitted picking up three of the alleged victims, and that one of the victims may have seen his gun, acknowledged being in the area of Waukonda and Columbus, and, finally, near the end of the interview, admitting having sex with the victim [LJ] and stated that he was in a lot of trouble and his life was over.

The defendant testified he did not rape anyone. He testified that he had sex with some prostitutes that he did not pay. He testified at -- that at the second show-up involving [LJ], there were people with bats outside threatening him and the police were abusive. During cross-examination, he claimed the gun in Exhibit 2 was not his. He also admitted during cross-examination that he had a naked woman in his motor vehicle on July 17th of 2010. Defendant made the incredulous claim that the victim's fingerprint may have been on his passenger door because her boyfriend may live on his street and she may have touched his motor vehicle.

The Court carefully weighed the evidence and the credibility of the witnesses and finds the defendant's testimony to be completely lacking in credibility. The victim's IDs of defendant, coupled with the physical exam of Nurse Tammy Jerz, the condom wrapper discovered by Officer Lundin, the matching fingerprints found by Officer Westrate of the Michigan State Police, and, finally, the testimony of Detective Smigielski relating the defendant's statements where he admits the gun

was his and admits having sex with the victim [LJ], persuades the Court beyond all possible doubt that the defendant is guilty as charged to the following offenses:

CSC -- Criminal Sexual Conduct 1st degree. The Court finds that the defendant engaged in a forceful nonconsensual sexual act by forcing his penis into the vagina of the victim, Miss [LJ], by threatening the victim with a firearm. Kidnapping. The defendant knowingly restrained and transported at gunpoint the victim for the purpose of engaging in sexual penetration, guilty of Possession of a Firearm by a Felon -- the Court takes judicial notice of his prior conviction -- guilty of one count of Felony Firearm, Count 4, for possessing a firearm while kidnapping the victim and raping her. The Court finds it is not necessary to rule as to Count 5, Felony Firearm. And there was some communication between the Court and Mr. Sepic and White as to that point.

Further, the Court takes judicial notice of the defendant's prior convictions as evidenced by Exhibit 6. That is my verdict as to that file.

The next file, 2010003429, Victim [SH].

Findings of Fact. The alleged victim testified that in the early morning hours of on or about July 17th of 2010 she was walking from the Sunny Spot store to her home on Milton. A vehicle approached her and a man offered her a ride. She said no, and the man pointed a firearm at her and told her to get in. She complied because of her fear of the weapon and the defendant told her that he, quote, want -- wanted to get off, close quote, or engage in sexual activity. When the car briefly slowed, the victim jumped from the moving vehicle and ran. She jumped a fence while being pursued by the defendant. She fell to the ground and was somewhat groggy, and -- and as the defendant pointed the weapon at her head and said, quote, bitch please, close quote, she shielded her head with her right arm at the same instant the defendant fired the handgun at her head. The bullet entered her right arm, shattering the bone above her elbow. The defendant fled and the victim sought assistance.

At the hospital, bullet fragments were recovered from the victim's bra. The victim has had multiple surgeries and may require additional surgeries. The victim ID'd the defendant in the lineup, People's Exhibit Number 5, and also in open court under oath. She also stated that she had never seen or read newspaper reports about the crimes before the lineup.

Again, the Court incorporates by reference the testimony previously stated of Officer Williams and Campbell.

The Court also received testimony of Off--from Officer Michael Burritt. The witness testified that he is a Michigan State Police Forensic Psy -- Scientist, who has worked as a firearms mark examiner from more than 19 years. He analyzed the bullet fragment received from the victim's undergarment and found that it had been fired by the handgun depicted in People's Exhibit Number 2. The Court reviewed the report prepared by the witness, admitted as People's Exhibit Number 4.

The Court has carefully weighed the evidence and the credibility of the witnesses and finds the defendant's testimony be -- testimony to be completely lacking in credibility. The Court finds the defendant tried to kill the victim and knew that he had the ability to cause serious injury by firing his weapon. He kidnapped the victim against her will with the stated intent of committing a sexual assault. The victim's IDs of the defendant, coupled with the testimony of Officers Burritt, Officer Williams, Detective Smigielski and Officer Westrate proves to the Court beyond a reasonable doubt that the defendant committed the offenses complained of in the complaint and finds the defendant guilty as charged to Count 1, Assault with the Intent to Murder, Count 2, Kidnapping, Count 3, Possession of a Firearm by a Felon, and Count 4, Felony Firearm.

The Court further takes judicial notice of the defendant's prior convictions as evidenced by Exhibit 6.

Next file, 2010003431, Victim [RJ]. The alleged-- The victim testified that she is presently 13 years old and was 12 years old last summer; that, in early July of this year, she was attending a party and was to walk to Union Park in the city of Benton Harbor to meet her mother. She testified that at approximately 10 p.m. a car was following her and ultimately pulled in front of her, at which time, a man pointed a gun at her and told her to get into the car. She was scared of the gun so she got into the car. She testified that she thought that the man was going to rape her. They rode around for about an hour in the car and the defendant asked how old she was. She stated she was 10 years old. He responded that she was too young to do something to. The victim and her mother waited several days to report the incident to the police. The victim ID'd the defendant in the lineup, Exhibit Number 5, and also in open court.

The Court also received testimony from Mr. Mike McKee, who's a Major with the Salvation Army. He testified that the defendant was a Supervisor at the men's homeless shelter. He testified as to the time cards, which were admitted and received, as Defense Exhibit A. He stated that the defendant would typically punch in and out when he worked. He further testified that there were no cameras at the homeless shelter and that it would be possible for the defendant to leave the shelter even though he had punched in.

The Court incorporates by reference the previously stated testimony of Officers Williams, Campbell, Lundin, Westrate, and Detective Smigielski, as well as the defendant.

The Court carefully weighed the evidence and the credibility of the witnesses and finds the defendant's testimony to be completely lacking in credibility. While the young age of this victim led to some confusion in relating dates, her two positive IDs of the defendant, coupled with the similarity of this crime to the other offenses, proves beyond a reasonable doubt that the defendant committed the offenses complained of in this complaint. The defendant kidnapped the victim at gunpoint with the intent to commit a criminal sexual assault. The victim feared the sexual assault and the weapon. Perhaps the only [thing] that prevented the assault was her stating that she was 10 years old.

Accordingly, the Court finds the defendant guilty as charged to Count 1, Kidnapping, Count 2, Possession of a Firearm by a Felon, Count 3, Assault with a Dangerous Weapon, and Count 4, Felony Firearm. Further, the Court takes judicial notice of the defendant's prior convictions as evidenced by Exhibit 6.

And, finally, last file, 2010003430, Victim [OA]. Officer Smigielski and Graves testified under oath that they made exhaustive attempts to serve the victim and have her appear. She told Detective Smigielski in a telephone conversation that she had been threatened with physical harm if she testified, and, she was afraid of the defendant.

Accordingly, the Court granted the People's motion, find[ing] the victim unavailable and allowing the sworn testimony of the victim from the preliminary examination held before this Court on July 29th of 2010 to be received as People's Exhibit Number 8. This Court, at that preliminary examination, had the ability to -- to judge the credibility of the victim and the credibility of the defendant when he testified at his trial.

A brief summary of the preliminary examination testimony of the victim, [OA], testified that on or about June 16th of 2010, around midnight, she was walking in the city of Benton Harbor when the defendant pointed a gun at her and raped her by placing his penis into her vagina against her will. The victim ID'd the defendant in open court at the exam, and also at the lineup prepared by Detective Smigielski and reference by -- as People's Exhibit Number 5, which was admitted and received.

The Court restates by reference the testimony of Officers Williams, Campbell and Detective Smigielski, as well as the testimony of the defendant.

The Court -- The Court carefully weighed the evidence and the credibility of the witnesses and finds the defendant's testimony to be without credibility. The victim's IDs of the defendant, coupled with the simi -- coupled with the similarity of the offenses and reasons stated herein, persuades the Court beyond a reasonable doubt that -- that the defendant committed the offenses complained of in the complaint and the Court finds the defendant guilty as charged in the complaint, Count 1, Criminal Sexual Conduct in the 1st degree, Count 2, Kidnapping, Count 3, Possession of a Firearm by a Felon, and Count 4, Felony Firearm. Further, the Court takes judicial notice of the defendant's prior convictions as evidenced by Exhibit -- People's Exhibit Number 6.

(T. Tr. II, ECF No. 30-11, PageID.1343-1356.)

On December 3, 2010, the court sentenced Petitioner, as a third-offense felony offender, to the prison terms described in the opening of this opinion. (Sentencing Transcript, (S. Tr.), ECF No. 30-12, PageID.1377-1380.)

## B. Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on July 27, 2011, raised the first four issues presented in the instant habeas application. (*See* Def.-Appellant's Br. on Appeal, ECF No. 30-13, PageID.1394.) Petitioner attempted to file a pro per motion to remand to resolve the discrepancies in the transcript (Mot. to Remand, ECF No. 30-19, PageID.1645), but the motion was returned to him as improperly filed (Mich. Ct. Op. Letter, ECF No. 30-19, ECF No. 1649). By unpublished opinion issued on June 28, 2012, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's convictions and sentences. (*See* 6/28/12 Mich. Ct. App. Opinion (MCOA Op.), ECF No. 30-13, PageID.1383-1390.)

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Supreme Court. Petitioner raised Grounds I, III, and IV of the issues presented in this habeas

- 11 -

petition. Petitioner did not, however, raise Ground II of the petition, which he had raised in the Michigan Court of Appeals. By order entered November 20, 2012, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* 11/20/12 Mich. Ord., ECF No. 30-14, PageID.1474.)

### C.      Post-conviction relief

Petitioner filed his initial habeas corpus application on or about January 30, 2014. With his application, Petitioner filed a motion to stay the federal court proceedings pending his exhaustion of certain new claims. The Court granted the stay on April 15, 2014, (ECF No. 157).

Petitioner filed a motion for relief from judgment in the Berrien County Circuit Court on May 9, 2014, in which he raised only Ground VI of this petition: ineffective assistance of appellate counsel in failing to raise inaccuracies in the transcription of the audio/video recordings of trial testimony. (*See* Br. in Supp. of Mot. for Relief from J., ECF No. 30-15, PageID.1523-1537.) The trial court denied the motion on June 23, 2014. (ECF No. 30-16, PageID.1578-1582.) Petitioner filed a motion for reconsideration (ECF No. 30-17), indicating that, attached to his motion for relief and brief in support, he had filed a motion to strike the trial transcripts, highlighting the due process violation set forth in Ground V of his petition: he was denied due process by Detective Smigielski's perjury, which was hidden by the transcription error. Petitioner claims that the motion also purportedly raised the claim set forth in Ground VII, that the prosecutor had committed misconduct by failing to correct the perjury. In an order issued on September 4, 2014, the trial court denied the motion for reconsideration. The court held in part that it had reviewed the transcripts alongside the audio recording and found the transcripts to be accurate and complete. (Ord. Denying Reconsid., ECF No. 30-18, PageID.1601.)

Petitioner filed applications for leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave to appeal on March 3, 2015, and June 28, 2016, respectively, on the grounds that Petitioner had failed to demonstrate entitlement to relief under MICH. CT. R. 6.508(D).

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the

decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.

Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th

Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

I.    Ground I:  Sufficiency of the Evidence

In his first ground for habeas relief, Petitioner contends that the evidence was insufficient in Case No. 3429 (involving victim SH) to support his conviction for assault with intent

to commit murder, because the evidence showed that he moved the gun sufficiently to only shoot the victim SH in the arm, rather than the head, where he had initially aimed the weapon.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a

nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals addressed Petitioner's sufficiency claim, as follows:

Defendant next argues that there was insufficient evidence to support his conviction of assault with intent to murder [SH] in lower court case no. 2010-003429-FC. Specifically, defendant argues that the prosecution failed to prove beyond a reasonable doubt that defendant acted with the requisite intent. We disagree.

A criminal defendant does not have to take any particular action in order to preserve for appeal a challenge to the sufficiency of the evidence. *People v Patterson*, 428 Mich 502, 505; 410 NW2d 733 (1987). A challenge to the sufficiency of the evidence is reviewed de novo and in a light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "All conflicts with regard to the evidence must be resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (internal citations omitted).

Assault with intent to murder, MCL 750.83, requires proof of three elements: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW2d 907 (1993). The trial court may base its finding of an actual intent to kill on a broad scope of evidence. See *People v Barclay*, 208 Mich App 670, 674; 528 NW2d 842 (1995). "The intent to kill may be proven by inference from any facts in evidence." *Id.* A fact-finder may infer an actual intent to kill "from the nature of the defendant's acts constituting the assault." *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005) (quotations and citations omitted). Such considerations include "the temper or disposition of mind with which they were apparently performed [and] whether the instrument and means used were naturally adapted to produce death." *Id.*

In this case, [SH] testified that she attempted to escape defendant but fell during her flight. According to [SH], while she was on the ground, defendant approached her with his gun aimed at her head. [SH] testified that she covered her face with her arms and asked defendant not to shoot her, to which he replied "Bitch, please" and shot her in the arm. The fact that defendant used a gun, an instrument "naturally adapted to produce death," to commit his assault against [SH] supports an

inference that defendant acted with an actual intent to kill [SH]. *Id.* Further, the fact that defendant aimed at her head before she covered her face with her arms and ultimately shot her arm supports the intent to kill. [SH]'s testimony that defendant said "Bitch, please" before firing the gun also evidenced that he performed the assault with a "temper or disposition of mind" that supports an inference of an actual intent to kill. See *id.* Therefore, the evidence was sufficient to support beyond a reasonable doubt the finding that defendant had the requisite intent to kill.

(MCOA Op., ECF No. 30-13, PageID.1385-1386.) Although the court of appeals did not cite *Jackson*, 443 U.S. 307, the standard it recited was identical to the *Jackson* standard. In addition, one of the cases on which the court relied, *People v. Cline*, 741 N.W.2d 563, 568 (Mich. Ct. App. 2007), itself cited *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992). The *Wolfe* court expressly relied on *Jackson*, 443 U.S. 307, when setting out the standard of review for challenges to the sufficiency of the evidence. As a consequence, the Michigan Court of Appeals applied the correct constitutional standard to Petitioner's claim.

Moreover, the court's application of the *Jackson* standard was patently reasonable. The Court has reviewed the testimony of SH and concludes that the state court's factual determinations represent a fully accurate summary of her testimony. SH jumped from the car when it was making a u-turn in an area she knew. (T. Tr. I, ECF No. 30-10, PageID.1212-1213.) She fell and rolled, then started running and screaming her friend's name. (*Id.*, PageID.1213-1214.) She jumped a tall barbed-wire fence, falling when she landed. Her fall left her dazed, and she could not get up right away. (*Id.*, PageID.1214-1215.) Petitioner walked up to the fence and put the gun to her head. She threw her arm over her face and said, "[P]lease don't shoot me." Petitioner responded, "Bitch, please," and he pulled the trigger, hitting her in the arm, between the elbow and the shoulder. (*Id.*, PageID.1215.) On these facts, the court of appeals reasonably found that Petitioner intended to kill SH by firing a handgun at close range, when the victim's arm was over

her head, despite the fact that the bullet struck only her arm, rather than her head or other vital organs.

As a consequence, Petitioner fails to demonstrate that the Michigan Court of Appeals unreasonably determined that sufficient evidence supported the charge of assault with intent to commit murder.

II.    Ground II:  Right to Face to Face Confrontation

Petitioner contends that he was denied his right of confrontation when two state experts, Doug Westrate (fingerprint expert) and Michael Burritt (firearms expert), were permitted to testify by way of two-way video proceedings.  Petitioner raised the issue on direct appeal to the Michigan Court of Appeals.  He did not, however, raised the claim in his application for leave to appeal to the Michigan Supreme Court.  Petitioner also did not raise the claim on collateral review. Respondent argues that the claim is both procedurally defaulted, because it is unexhausted, and that the claim lacks merit.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d

480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

In the instant case, Petitioner has not fully exhausted his claim, as he failed to present it to the Michigan Supreme Court. An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Exhaustion is only a problem, however, if there is a state-court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq*. *See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. He therefore has no available remedy, and his claim is deemed procedurally defaulted. *Id.* At this juncture, the Court must consider whether there exists cause and prejudice to excuse Petitioner's failure to present the claims in state court, or whether a fundamental miscarriage of justice would occur absent habeas review. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160. To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488 (1986); *see also*

*McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice, or a fundamental miscarriage of justice, cannot have a cognizable claim. *Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner does not and cannot show good cause for failure to raise his claim to the Michigan Supreme Court. Because the issue was raised in the court of appeals, Petitioner was fully aware of the claim, but nevertheless failed to seek further review in the Supreme Court and failed to raise the claim in his motion for relief from judgment. Indeed, in the order granting Petitioner's motion to stay the habeas proceedings, this Court specifically noted that Petitioner had not raised the issue to the Michigan Supreme Court and that the issue therefore was unexhausted. (Ord. Granting Stay, ECF No. 8, PageID.158 & n.1.) Yet Petitioner still failed to remedy the problem, despite returning to the state court to raise other claims. Under these circumstances, Petitioner cannot demonstrate cause excusing his default.

Moreover, Petitioner cannot show prejudice, as he waived his right to face-to-face confrontation at trial. Prior to presenting the testimony of witnesses Westrate and Burritt, defense counsel was asked and agreed that the prosecution could present the two witnesses by way of video and audio testimony. (T. Tr. I, ECF No. 30-13, PageID.1388-1389.) The Michigan Court of Appeals found that Petitioner had waived his confrontation claim at trial. (*See* T. Tr. I, ECF No. 30-10, PageID.1388.) Courts repeatedly have held that a defendant's right under the Confrontation Clause may be waived by a defendant. *See Bailey v. Mitchell*, 271 F.3d 652, 657 (6th Cir. 2001) (citing

*Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  Because Petitioner clearly waived his right to face-to-face confrontation, he was not prejudiced by his procedural default.

Finally, Petitioner makes no attempt even to argue that the use of video conferencing technology resulted in a fundamental miscarriage of justice.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Petitioner does not even assert, much less show, that he is actually innocent, based on new reliable evidence.

For all these reasons, Petitioner's second ground for habeas relief is procedurally defaulted.

III.    Ground III:  Jury Waiver

In his third ground for habeas relief, Petitioner argues that he did not knowingly, intelligently, and voluntarily waive his right to a jury.  He therefore contends that his bench trial violated the Sixth Amendment.

Petitioner raised his third habeas ground on direct appeal.  The Michigan Court of Appeals addressed the issue at length:[3]

---

[3] Respondent argues that the issue is procedurally defaulted, because Petitioner failed to raise the issue before the trial court.  "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may proceed to the merits, assuming without deciding that there was no procedural default or that Petitioner could show cause and

Defendant first argues that he did not knowingly, intelligently, and voluntarily waive his right to a jury and, thus, the following bench trial violated the Sixth Amendment. We disagree. This issue is unpreserved because defendant did not raise the issue before the trial court. *See People v Antkoviak*, 242 Mich App 424, 430; 619 NW2d 18 (2000). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

"Both the federal and state constitutions guarantee a defendant the right to a jury trial." *People v Mosly*, 259 Mich App 90, 95; 672 NW2d 897 (2003). "However, with the consent of the prosecutor and the approval of the trial court, a defendant may waive his right to a jury trial. In order for a jury trial waiver to be valid, however, it must be both knowingly and voluntarily made." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009) (citations omitted). In Michigan, the procedure by which a defendant waives his right to a jury trial is governed by MCR 6.402(B). *Mosly*, 259 Mich App at 95. MCR 6.402(B) provides the following:

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

In this case, at the hearing on defendant's motion to waive his right to a jury trial, defendant informed the court that he wished to waive his right to a jury trial:

> *The Court*: [S]o, if we can go ahead and give [the jury trial waiver form] to [defendant], and take a few moments and go through that.
>
> All right, [defendant], sir, you've had the opportunity to discuss this matter with your attorney . . . at length –
>
> *The Defendant*: Yeah.
>
> *The Court*: – and you do wish to waive your right to a jury trial, sir?
>
> *The Defendant*: Yes.

---

prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

We find that although the trial court referenced defendant's right to a jury trial, it did not explicitly "advise the defendant in open court of the constitutional right to trial by jury."  MCR 6.402(B) (emphasis added).  Moreover, while the trial court confirmed with defendant that he had discussed the matter with his trial counsel and "wish[ed] to waive [his] right to a jury trial," the trial court did not specifically ask defendant if he understood his right to a jury trial.  Accordingly, we find that the trial court did not fully comply with the specific language of MCR 6.402(B).  However, the mere finding that the trial court failed to comply with MCR 6.402(B)'s procedural rules does not warrant reversal.

> [A] trial court's failure to follow procedural rules for securing a waiver of the right to a jury trial does not violate the federal constitution nor does it require automatic reversal.  Indeed, compliance with the court rules only creates a presumption that a defendant's waiver was voluntary, knowing, and intelligent.  If a defendant's waiver was otherwise knowingly, voluntarily, and intelligently made, reversal will not be predicated on a waiver that is invalid under the court rules because courts will disregard errors that do not affect the substantial rights of a defendant[.]  [*Mosly*, 259 Mich App at 96 (citations omitted).]

In this case, the record supports the conclusion that defendant "understood that he had a right to a trial by jury and voluntarily chose to waive that right." *Id.*  In addition to the facts provided above, defendant wrote to the trial court on two separate occasions before trial. The first letter was received by the court on August 31, 2010, and stated the following:

> I am confirming the fact that, i [sic] talked it over with my attorney and we agreed on me having a bench trial.  Due to heavy media coverage, newspaper, and internet attention, everyone has gotten full details concerning my case.  This decision was thought through carefully.  Earnest White shall confirm this on my behalf.

Later, another letter was sent to the trial court.  This letter was dated October 15, 2010, and was signed by both defendant and his attorney:

> I, Terrance Dawson, defendant/juvenile in the above case, hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a judge of the court in which the case may be pending[.]  I fully understand that under the laws of this state I have a constitutional right to a trial by jury.

Accordingly, we find no plain error in the trial court allowing defendant to proceed without a jury trial.

(6/8/12 MCOA Op., ECF No. 30-13, PageID.1383-1385.)

To the extent that Plaintiff argues, as he did in the state courts, that his waiver of a jury trial violated MICH. CT. R. 6.402(B) and the Michigan constitution, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

With respect to Petitioner's federal constitutional claim, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the fundamental right to a trial by jury. *Duncan v Louisiana*, 391 US 145, 149 (1984); U.S. CONST., am.VI, cl. 2. However, the right to trial by jury may be waived by the defendant, and such waiver is valid if it was voluntary and intelligent under the circumstances of the case. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 278 (1942). "[T]he dispositive inquiry is whether the defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Jells v. Mitchell*, 538 F.3d 478, 510 (6th Cir. 2008) (quoting *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004)).

The court of appeals squarely reviewed the issue on constitutional grounds, applying the federal standard, despite citing only state law cases. The cases cited by the court of appeals, *People v. Cook*, 776 N.W.2d 164 (Mich. Ct. App. 2009), and *People v. Mosly*, 672 N.W.2d 897 (Mich. Ct. App. 2003), expressly rely on the constitutional standard that, "for a jury trial waiver to be valid, . . . it must be both knowingly and voluntarily made." *Cook*, 776 N.W.2d at 166; *see also Mosly*, 672 N.W.2d at 900 (recognizing that MICH. CT. R. 6.402(B) was merely the procedure established to ensure that a defendant has knowingly and voluntarily waived his constitutional right to a jury).

As the court of appeals concluded, Petitioner waived his right to a jury in open court, signing a waiver form listing the rights he was waiving only after having an opportunity to read the form and speak to his attorney. Having acknowledged that he had discussed the issue at length with his attorney, Petitioner stated that he wished to waive his right to a jury trial. (Hr'g on Mot. to Waive Jury Tr., ECF No. 30-8, PageID.1099-1100.) In addition, prior to presenting the waver-of-rights form to Petitioner, the trial court indicated on the record that both attorneys had discussed the matter in chambers. (*Id.*, PageID.1098.) And defense counsel expressly stated on the record that his client was asking for a bench trial and wanted the trial to proceed before the judge on Case No. 3431, who was the judge who ultimately tried the case. (*Id.*, PageID.1098-1099.)

Further, as fully discussed by the Michigan Court of Appeals, Petitioner wrote two additional letters to the trial court prior to the waiver hearing. In those letters, he explained the reasons behind his request: his concerns about receiving a fair trial from a jury, in light of the publicity that had surrounded the cases. (6/8/12 MCOA Op., ECF No. 30-13, PageID.1385.) He

also stated that had discussed it with his attorney and understood that he had a constitutional right to a trial by jury, but he wished to waive his right. (*Id.*)

Under all of these circumstances, it is readily apparent that Petitioner "'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Jells*, 538 F.3d at 510 (citing *Sowell*, 372 F.3d at 836). The court of appeals therefore reasonably found the facts and reasonably applied established Supreme Court precedent to those facts to determine that Petitioner voluntarily, knowingly, and intelligently waived his right to a jury trial.

IV.     Ground IV:  Right to Confront Accuser

In his fourth ground for habeas relief, Petitioner argues that he was denied his Sixth Amendment right to confront his accuser when the trial court admitted the testimony of one of the victims, OA, recorded at the preliminary examination. The Michigan Court of Appeals thoroughly addressed the issue and rejected it, as follows:

> Defendant next argues that the trial court violated his Sixth Amendment right to confront his accuser by admitting OA's preliminary examination testimony. We disagree.
>
> While the trial court's decision to admit evidence is reviewed for an abuse of discretion, *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010), constitutional issues are reviewed de novo, *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009). A trial court's factual findings, including whether the prosecution exercised due diligence in attempting to serve an absent witness with a subpoena is reviewed for clear error. *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995).
>
> "Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront the witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). "The Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the

witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008). Statements made during a preliminary examination are testimonial and implicate the defendant's Sixth Amendment right of confrontation. See *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

In this case, the trial court admitted [OA]'s preliminary examination testimony under MRE 804(b)(1). MRE 804(b)(1) provides that the hearsay rule does not exclude a declarant's former testimony if the declarant is unavailable and "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

MRE 804(a)(5) states that a declarant in a criminal case is "unavailable" where she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. The trial court's determination will not be disturbed on appeal unless a clear abuse of discretion is shown." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998) (citation omitted).

In this case, Officer Jared Graves testified that he went to [OA]'s last known place of residence in order to serve her with a subpoena to appear at trial, but [OA] was no longer living there. Thereafter, Officer Graves sent [OA] a Facebook message, telling her to contact him "ASAP." [OA] never contacted Officer Graves. Detective Wes Smigielski testified that, on four or five occasions during the month-and-a-half leading up to trial, he went to a house where he believed [OA] might be living. Detective Smigielski was never able to locate [OA] or serve her a subpoena to appear at trial, so he twice left his business card with his cellular telephone number at the house. Detective Smigielski testified that, after his third attempt to serve her the subpoena, [OA] called him from an unknown telephone number and told him that she refused to appear at trial because of threats she had received and her fear of seeing defendant again. Nevertheless, Detective Smigielski continued his attempts to serve [OA] with the subpoena.

After considering the above facts, we conclude that the trial court did not clearly err in finding that the prosecution established due diligence in attempting to serve [OA]. The prosecution pursued all specific leads regarding [OA]'s whereabouts and continued to try and serve her while knowing she was avoiding service. Moreover, the fact that the prosecution's efforts to serve [OA] with a subpoena began at least six weeks before the trial date evidences due diligence. See *People v Watkins*, 209 Mich App 1, 4; 530 NW2d 111 (1995) (noting that "the prosecution had shown due diligence in attempting to locate and produce [the

witness]" because, in part, the record indicated that the prosecution's "efforts to locate [the witness] began at least a month before the retrial"); *People v Conner*, 182 Mich App 674, 682; 452 NW2d 877 1990) ("[T]he prosecution's efforts to serve [the witness] commencing six weeks in advance of the trial were timely.").

We similarly find that the trial court did not clearly err in determining that defendant had a prior "opportunity and similar motive to develop" [OA]'s testimony by cross-examination. "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). In determining whether the prosecution had a "similar motive" under MRE 804(b)(1), a trial court should consider:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings - both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id.* at 278 (internal quotation omitted).]

Although a preliminary examination's purpose and standard of proof do not mirror that of a trial, a defendant has a similar motive to cross-examine the witness at the preliminary examination. *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998); *People v Adams*, 233 Mich App 652, 659; 592 NW2d 794 (1999). In this case, defendant's trial counsel cross-examined [OA] at the preliminary examination and elicited testimony that she was on medication at the time of the alleged incident, that she was the only witness to the alleged incident, and that she only saw a glimpse of her abductor's face. At trial, the prosecution introduced [OA]'s preliminary examination testimony for the same purpose that it introduced her testimony at the preliminary examination. We find that defendant's interest and motive in discrediting [OA]'s preliminary examination testimony was similar to his interest and motive at trial. *Meredith*, 459 Mich at 67; *Adams*, 233 Mich App at 659. Thus, the trial court did not abuse its discretion in admitting [OA]'s preliminary examination testimony under MRE 804(b)(1).

Likewise, defendant's claim that his rights under the Confrontation Clause were violated fails for similar reasons. The Confrontation Clause bars the admission of out-of-court testimonial statements only when the declarant is unavailable to testify and where defendant did not have a prior opportunity to cross-examine the declarant. *Crawford*, 541 US at 59, 68; *People v Taylor*, 482 Mich 368, 377; 759 NW2d 361 (2008). As just discussed, the declarant, [OA], was unavailable and

defendant had a prior opportunity to cross-examine [OA]. Accordingly, admission of the testimonial out-of-court statement did not violate the Confrontation Clause.

(6/12/12 MCOA Op., ECF No. 30-13, PageID.1386-1388.)

As the Michigan Court of Appeals recognized in its opinion, the Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. CONST., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia*, *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted). The Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.*, 379 F. App'x at 438. As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's

determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent. *Id.*, 379 F. App'x at 438-440; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

Here, as the court of appeals noted, the prosecution presented significant evidence concerning its attempts to produce OA to testify at trial, but it was unable to secure her testimony. In fact, when reached by Officer Graves, OA told him that she was afraid to testify at trial. (T. Tr. I., ECF No. 30-10, PageID.1182-1183.) In addition, Detective Smigielski testified that he had spoken with OA twice, when she called him from an unknown number. She told him that she had been threatened in the street and was too afraid to testify. (*Id.*, PageID.1286.) Under the circumstances, the state court reasonably concluded that the prosecution had shown that OA was unavailable to testify at trial. Moreover, as the court of appeals also recognized, the opportunity to cross-examine OA was not only available to Petitioner at the preliminary examination, but also was exercised effectively by defense counsel, who used cross-examination to elicit OA's testimony that she was taking medication for her bipolar disorder at the time of the incident, that she was the only witness, and that she had only glimpsed the perpetrator's face. (Prelim. Examination Tr. I, ECF No. 30-6, PageID.992-993.)

Under all of the recited circumstances, the state court's decision to admit the preliminary examination testimony of OA was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

V.     Ground V:  Denial of Due Process

In his fifth ground for habeas relief, Petitioner contends that he was denied due process of law, because of errors in the transcripts.  Although Petitioner did not raise this error directly in his motion for relief from judgment, he argued that his appellate attorney rendered ineffective assistance of counsel in failing to correct transcript errors.

Notwithstanding Petitioner's failure to directly raise the issue, the court addressed the deficiencies of the claim, in its order denying relief from judgment, finding the Petitioner had failed to demonstrate that actual prejudice resulted from his appellate attorney's failure to further investigate the issue:

> . . . Defendant provides several documents that he says support his contention that the trial transcripts contain material errors, including an affidavit from his mother, wherein she states that she viewed the video recording of the trial and listened to the audio recording where she "discovered errors in the opening statement."  Affidavit of Florine Dawson, attached to Defendant's Brief.
>
> Defendant relies upon *People v Abdella*, 200 Mich App 473; 505 NW2d 18 (1993) to argue that his case should have been remanded to the trial court to allow the court to compare the recordings with the written transcripts.  In *Abdella*, the trial court denied the defendant's request to listen to audio recordings of the trial, a decision that was reversed by the Court of Appeals.
>
> But Defendant admits that the trial court has provided him (and his mother) with access to audio/video recordings of the trial, and still he has not provided any evidence that substantive errors in the transcript would have materially affected his appeal.  He lists several places where the transcript does not comport with the audio/video recording (most significant is his claim that an entire witness's testimony was fabricated out of thin air), but fails to argue how these errors would be significant to his case.

(Op. & Order on Mot. for Relief from J., ECF No.30-16, PageID.1578-1579.)

Not satisfied with the court's response, Petitioner filed a motion for reconsideration. In an opinion and order denying the motion for reconsideration, the court found that, not only had Petitioner failed to identify any material error in the transcript, but also the claim was factually false:

> This Court has simultaneously reviewed the transcripts of Detective Smigielski's testimony with the audio recording from trial and finds the transcripts to be an accurate and complete representation of Detective Smigielski's testimony. Therefore appellate counsel did not provide ineffective assistance by failing to raise a meritless claim on appeal.

(Op. & Order on Mot. for Reconsid., ECF No. 30-18, PageID.1601.)

Due process requires that a defendant in a criminal case be provided with a transcript of a prior proceeding when that transcript is needed for an effective defense or appeal. *See, e.g.*, *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *Griffin v. Illinois*, 351 U.S. 12, 19–20 (1956) (state violates equal protection if it fails to provide an indigent defendant with an available transcript for appeal). However, the Supreme Court has recognized that certified records of court proceedings are presumptively accurate. *See Parke v. Raley*, 506 U.S. 20, 29-30 (1992) (holding that where a case was long final and no transcript existed because the petitioner had not appealed his earlier convictions, the silent record was presumptively regular and did not require more to demonstrate that the petitioner had waived his right to counsel in the earlier guilty plea proceeding). The Court "has never held that the absence of a portion of a trial transcript automatically entitles the defendant to a retrial." *Jackson v. Renico*, 179 F. App'x 249, 252 (6th Cir. 2006). However, the Court has recognized that errors in transcription can implicate due process and overcome the presumption of accuracy if the defendant makes a colorable showing that material inaccuracies in transcription have adversely affected the ability to secure postconviction release. *Chessman v. Teets*, 354 U.S. 156, 164 (1957).

In *Bransford v. Brown*, 806 F.2d 83 (6th Cir. 1986), the Sixth Circuit ruled that a state prisoner seeking federal habeas must demonstrate prejudice due to a missing or inaccurate transcript before a constitutional violation of a right to a fair appeal will be found. *Id.* at 86. The court explained that the absence or inaccuracy of a transcript does not amount to a per se denial of a defendant's due process right to a fair appeal. *Id.*; *see also Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (relying on *Bransford*). Instead, "in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcript ." *Bransford*, 806 F.2d at 86.

In the instant case, in his motion for relief from judgment, Petitioner did not recite the alleged errors in the transcript about which he was complaining. Instead, he merely included in his many attachments to the motion for relief a copy of a motion to strike that was never filed in the Michigan Court of Appeals on direct review. The trial court, undoubtedly not realizing that Petitioner was relying on the list in the attachment, rejected Petitioner's claim as unidentified and unsupported. That conclusion was reasonable, as Petitioner did not in fact present the claims.

In his motion for reconsideration, however, Petitioner finally pointed the trial court to his motion to strike, but then confusingly indicated that, by the way, his family had discovered that some of the alleged errors were actually not errors. As a result, in his motion for reconsideration, Petitioner focused on an entirely new claim concerning another "transcription error in regard to [Detective] Wes Smigielski . . . ." (Mot. for Reconsid., ECF No. 30-17, PageID.1586.) The trial court expressly rejected the new claim, concluding that, upon comparison of the trial transcript to the recordings, the transcript was accurate. The state court's finding of fact is entitled to a presumption of correctness, which Petitioner must overcome by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

- 34 -

Petitioner wholly fails to meet his burden. Instead, he continues to rely on his mother's affidavit, claiming that she found an unspecified portion of the opening statement was not wholly accurate. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief). Even more clearly, such allegations do not rise to the level of clear and convincing evidence required to overcome the state court's holding.

Plaintiff therefore is left with only his own statement in his motion to strike that there existed a number of inaccuracies in the transcript. He acknowledges, however, that he had been wrong in his motion to strike about his claim that Justin Goff's testimony was not actually in the record. (Mot. for Reconsid., ECF No. 30-17, PageID.1586 (referrencing Mot. to Strike, ECF No. 30-15, PageID.1564-1566).) According to Plaintiff, all of the alleged inaccuracies in the transcript were found by his family when comparing the audio recordings to the written transcript. Yet, in the state courts, as in this court, Petitioner provides no averment from a family member to that effect. (Def't's Aff. in Supp. of Mot. for Reconsid., ECF No. 30-17, PageD.1594.) As a result, his allegations of transcript error are unsupported.

Finally, the trial judge expressly stated that he had compared the written transcript with the recordings and did not find the errors identified by Petitioner. Petitioner's continuing reference to the previously rejected claims amounts to nothing more than a statement that the trial court was wrong – without any evidence to that effect. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective

assistance of counsel do not justify habeas relief).  Even more clearly, such allegations do not rise

to the level of clear and convincing evidence required to overcome the state court's factual

determination.

For the foregoing reasons, Petitioner fails to demonstrate entitlement to relief on his

fifth ground for habeas relief.

VI.　　Ground VI:  Ineffective Assistance of Trial and Appellate Counsel

Petitioner claims that he was denied the effective assistance of counsel at trial and on

appeal.  He argues that his trial attorney "failed to act on clearly discernable perjury."  With respect

to appellate counsel, Petitioner appears to rely on the claims presented in the state courts, largely

related to his claim that his attorney rendered ineffective assistance in raising and further

investigating the alleged errors in the trial transcript.

A.　　Trial counsel

Plaintiff's claim was not raised in the state courts, either on direct or collateral review.

"If the claims presented in the federal court were never actually presented in the state courts, but a

state procedural rule now prohibits the state court from considering them, the claims are considered

exhausted, but are procedurally barred."  *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir.  2001) (citing

*Coleman*, 501 U.S. at 752-53), *rev'd on other grounds*, 535 U.S. 635 (2002).  Petitioner has already

filed his one allowed motion for relief from judgment.  *See* MICH. CT. R. 6.502(G)(1).  He therefore

has no available remedy.  As a result, the court must consider whether there is cause and prejudice

to excuse Petitioner's failure to present the claims in state court, or a miscarriage of justice.  *See*

*Gray*, 518 U.S. at 161-62; *Rust*, 17 F.3d at 160.  To show cause, Petitioner must point to "some

objective factor external to the defense" that prevented him from raising the issue in his first appeal.

*Murray*, 477 U.S. at 488; *see McCleskey*, 499 U.S. at 497 (1991). Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy*, 757 F.2d at 100. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536.

Petitioner utterly fails even to argue cause excusing his procedural default. Moreover, his conclusory claim utterly fails to demonstrate that he was prejudiced in any way by his attorney's failure to object to unspecified alleged perjury. Finally, as previously discussed, he neither alleges nor shows that he is actually innocent; he therefore cannot show a miscarriage of justice. As a consequence, he is barred from relief on habeas review.

B.    Appellate counsel

In his motion for relief from judgment, Petitioner argued that appellate counsel was ineffective in failing to investigate and raise the claim that the trial transcript was inaccurate in ways that seriously affected the ability to secure post-conviction relief. Petitioner contended that the grounds raised by appellate counsel were weak, and that counsel should have given the transcript issue the highest priority.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that

- 37 -

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

On direct appeal, Petitioner's attorney raised the first four grounds presented in his habeas petition: (1) improper waiver of a jury trial; (2) sufficiency of the evidence; (3) right to

confront OA; and (4) right to face-to-face confrontation of state evidence experts. Each of those four grounds, while not ultimately resolved in Petitioner's favor were stronger than the issue of transcript error. As previously discussed, the state court held that the claim of transcript error was unsupported and meritless. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Goff v. Bagley*, 601 F.3d 445, 464 (6th Cir. 2010); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). As a consequence, Petitioner's sixth ground for relief is meritless.[4]

VII.    Ground VII:  Prosecutorial Misconduct

In his seventh ground for relief, Petitioner argues that the prosecutor committed misconduct by failing to correct perjury. Petitioner does not expand on his claim, but he apparently has merely rephrased a claim he raised for the first time in his motion for reconsideration of the order denying his motion for relief from judgment. (*See* Mot. for Reconsid., ECF No. 30-17, 1586-1587.) In that motion, he raised a new "transcription error" in Detective Smigielski's testimony. (*Id.*) A review of the claim, however, suggests that he intended to claim that Smigielski had perjured himself, because his testimony was not entirely consistent with an earlier statement by Smigielski.

---

[4] I also note that the trial court, in denying Petitioner's motion for relief from judgment and denying reconsideration, extensively and persuasively addressed the issue of appellate counsel's effectiveness. (Op. & Order Den. Relief from J., ECF No. 30-17, PageID.1595-1599; Op. & Order Den. Reconsid., ECF No. 30-18, PageID.1600-1601.) I find no error in the trial court's analysis or determination.

(*Id.*)  At no time, however, did Petitioner argue that the prosecutor had committed misconduct by suborning perjury.

As in Grounds II and VI(A), Petitioner has not exhausted his claim of prosecutorial misconduct.  Because he already has filed his one allotted motion for relief from judgment, he has no available state-court remedy.  *See* MICH. CT. R. 6.502(G)(1).  His claim therefore is procedurally defaulted.  *Gray*, 518 U.S. at 161-62; *Rust*, 17 F.3d at 160.  In order to overcome his procedural bar, Petitioner must show either cause and prejudice, or a miscarriage of justice.  *House*, 547 U.S. at 536.

Petitioner does not even allege cause for his failure to raise the claim.  Moreover, he cannot show prejudice, as the alleged perjury he raises was a mere conflict in testimony on direct and cross examination.  The judge, as factfinder, was perfectly able to assess the witness' credibility. Finally, as previously discussed, Petitioner makes no claim or showing of actual innocence.  He therefore is not entitled to habeas relief on his procedurally barred claim.

## Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the

certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. Therefore, I recommend that a certificate of appealability should be denied.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.


Dated:  August 18, 2017                    /s/ Ray Kent_____
                                           RAY KENT
                                           United States Magistrate Judge



### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fᴇᴅ. R. Cɪᴠ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).